DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, which following a jury trial, found appellant, Rickie Wade, guilty of possession of crack cocaine (Count 1), in violation of R.C.2925.11(A) and (C)(4)(e), a felony of the first degree, trafficking in cocaine (Count 2), in violation of R.C.2925.03(A)(2) and (C)(4)(f), a felony of the first degree, possession of cocaine (Count 3), a violation of R.C. 2925.11(A) and (C)(4)(b), a felony of the fourth degree, aggravated possession of drugs, to wit Dilaudid pills, (Count 4), in violation of R.C. 2925.11(A) and (C)(1)(a), a felony of the fifth degree, possession of marijuana (Count 5), in violation of R.C.2925.11(A) and (C)(3)(c), a felony of the fifth degree, and trafficking in marijuana (Count 6), in violation of R.C.2925.03(A)(2) and (C)(3)(a), a felony of the fifth degree. Appellant was fined $20,000, as to the first and second counts, and was sentenced to a term of nine years as to Count 1, nine years as to Count 2, 17 months as to Count 3, 11 months as to Count 4, 11 months as to Count 5, and 11 months as to Count 6. The first, second and third counts were ordered to be served concurrently. Count 4 was ordered to be served consecutively to Counts 1, 2, and 3. Counts 5 and 6 were ordered to be served concurrently to each other, but consecutively to the sentences imposed in Counts 1, 2, 3, and 4. For the following reasons, we affirm appellant's convictions, but reverse this case as to sentencing.
 {¶ 2} Appellant was indicted on a total of 11 drug related offenses, occurring at two separate residences. Counts 1 through 6 concerned evidence discovered following the execution of a search warrant at 821 Elysian Avenue, Toledo, Ohio. Counts 7 through 11 concerned evidence discovered following the execution of a search warrant at 2376 Victory Avenue, Toledo, Ohio. Appellant was acquitted of the charges brought against him with respect to the Victory address.
 {¶ 3} On appeal, appellant raises the following assignments of error:
 {¶ 4} "Assignment of Error Number One
 {¶ 5} "The trial court erred to the prejudice of Mr. Wade by denying his motion to suppress the results of a search warrant executed in violation of his due process rights guaranteed under the fourth, fifth, sixth, and fourteenth amendments to the United States Constitution and the Ohio Constitution.
 {¶ 6} "Assignment of Error Number Two
 {¶ 7} "Trial counsel was ineffective in failing to request from the trial court findings of fact and conclusions of law with regard to the motion to suppress in violation of Mr. Wade's fourth, fifth, sixth, eight and fourteenth amendments to the United States Constitution and the Ohio Constitution.
 {¶ 8} "Assignment of Error Number Three
 {¶ 9} "Prosecutorial misconduct during the closing argument of the state deprived Mr. Wade of his right to a fair trial and reliable adjudication and the trial court erred in denying the defense motion for a mistrial in violation of his due process rights under the fifth, sixth and fourteenth amendments to the United States Constitution and the applicable portions of the Ohio Constitution.
 {¶ 10} "Assignment of Error Number Four
 {¶ 11} "The trial court erred to the prejudice of Mr. Wade when it sentenced him to non-minimum, consecutive sentences based on facts not alleged in the indictment nor admitted by Mr. Wade.
 {¶ 12} Appellant argues in his first assignment of error that the trial court erred in denying his motion to suppress and in failing to conduct a hearing with respect to his motion. Appellant filed a motion to suppress in the trial court on the basis that Detective Mike Awls' affidavit contained only conclusory, hearsay information, based upon the statements of one informant of unknown reliability, and did not provide the issuing judge with a substantial basis for an independent determination that probable cause existed to issue the warrants to search the premises. Additionally, appellant argued that certain statements allegedly made by an informant, and included in the affidavits, were false and were included intentionally, or with reckless disregard for the truth.
 {¶ 13} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (Illinois v. Gates
[1983], 462 U.S. 213, 238-239 * * * followed.)" State v. George
(1989), 45 Ohio St.3d 325, paragraph one of the syllabus. See also, State v. Jordan, 101 Ohio St.3d 216, 2004-Ohio-783, at ¶37-38.
 {¶ 14} The reviewing court should not "substitute its judgment for that of the magistrate's by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the court would issue the search warrant." George at paragraph two of the syllabus. Rather, it is the duty of the reviewing court "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. Great deference should be given to the magistrate's determination of probable cause, and any marginal cases should be resolved in favor of upholding the warrant. Id. Moreover, "[i]Information not provided to the magistrate cannot be considered in assessing a warrant's validity." State v.Cooey (1989), 46 Ohio St.3d 20, 29, citing, State v. Graddy
(1978), 55 Ohio St.2d 132, 134, fn. 1.
 {¶ 15} In this case, the affidavits submitted in support of the search warrants stated that appellant was trafficking in cocaine and crack cocaine, that the confidential source observed on a number of days, between February and May 2003, that marijuana and powder and crack cocaine were being stored at and sold from 2376 Victory and 821 Elysian Avenues by appellant and "members in this organization," including Terence Bradford and Roberto Bell. The affidavits additionally stated that, based upon the confidential source's observations of drug trafficking inside 2840 Nebraska, a search warrant was executed at that residence, and that crack cocaine, valued at over $7,000, $3,000 in U.S. currency, and marijuana was found. Upon review of the affidavits, we find that under all the circumstances set forth in the affidavits, the issuing judge had a substantial basis for concluding that probable cause existed to issue the search warrants.
 {¶ 16} Appellant argues, however, that certain information contained in the affidavits was false and that a hearing should have been conducted to review the veracity of the facts set forth in the warrant affidavits. In support of his motion to suppress, appellant submitted an affidavit from the owner of 2840 Nebraska Avenue who stated that the residence was vacant until approximately February 27 or 28, 2003, when he rented the premises to Bradford and Bell. The warrant affidavits, however, stated that "On or about 2/20/03 the confidential source contained in this affidavit contacted this affiant about the narcotics trafficking being conducted from 2840 Nebraska."
 {¶ 17} In State v. Roberts (1980), 62 Ohio St.2d 170,177-178, the Ohio Supreme Court set forth the circumstances under which a defendant is entitled to a hearing to challenge the veracity of the facts set forth in a warrant affidavit as follows:
 {¶ 18} "In Franks v. Delaware (1978), 438 U.S. 154,98 S.Ct. 2674, 57 L.Ed.2d 667, the United States Supreme Court squarely addressed the issue of when a defendant, under theFourth Amendment, is entitled to a hearing to challenge the veracity of the facts set forth in the warrant affidavit after the warrant has been issued and executed. The court, at pages 155-156, 98 S.Ct. at pages 2676-2677, summarized its holding as follows:
 {¶ 19} "`* * * (W)here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, requires that a hearing be held at the defendant's request. * * *'
 {¶ 20} "A defendant who seeks to overcome the presumption of validity accorded a warrant affidavit by making a substantial preliminary showing of a knowing, intentional, or reckless falsity, has, under Franks, supra, the task of supporting his allegations by more than conclusional accusations, or the mere desire to cross-examine. Instead, a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim. This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained. Even if the above is established, the court in Franks stated that an evidentiary hearing to review the validity of the search warrant is not mandated by the Fourth Amendment if, after the affidavit material alleged to be false is excluded from the affidavit, there remains sufficient content in the affidavit to support a finding of probable cause. [Franks at 171-172]."
 {¶ 21} In this case, we find that appellant failed to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. The date in the warrant affidavit, regarding when the confidential source first contacted the affiant regarding narcotics trafficking at 2840 Nebraska Avenue, was not specifically February 20, 2003, but was "on or about" February 20, 2003. February 27 or 28 is within the proximity of February 20. Even if the trial court had found that the warrant affidavit's information was false regarding the date the confidential source first contacted affiant concerning the Nebraska address, we nevertheless find that, after removing the allegedly false statement from the affidavits, there was sufficient evidence presented to establish probable cause to issue search warrants for the Victory and Elysian addresses. The confidential source had reported numerous and detailed accounts regarding the presence of cocaine, crack cocaine and marijuana at the subject addresses. Moreover, regardless of the alleged date discrepancy, the confidential source had proved reliable with respect to the information concerning the presence of drugs at the Nebraska address.
 {¶ 22} Accordingly, we find that there was a sufficient basis provided in the warrant affidavits upon which a neutral and detached magistrate could find probable cause to issue search warrants for the Elysian and Victory addresses. Having found that probable cause could be established, even without the allegedly false statements contained in the warrant affidavits, we find that appellant was not entitled to a hearing on his motion to suppress. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 23} Appellant argues in his second assignment of error that his trial counsel was ineffective in failing to request from the trial court findings of fact and conclusions of law regarding the denial of his motion to suppress. Having already found that there was probable cause to issue search warrants for the Elysian and Victory addresses, we find that any alleged error by trial counsel, in not requesting findings of facts and conclusions of law from the trial court, did not prejudice appellant. SeeStrickland v. Washington (1984), 466 U.S. 668, 687. Appellant's second assignment of error is therefore found not well-taken.
 {¶ 24} Appellant argues in his third assignment of error that the trial court erred by denying his motion for a new trial on the basis of prosecutorial misconduct. In particular, appellant complains about certain statements made during closing by Assistant Prosecutor Michael J. Loisel in his rebuttal argument. Appellant argues that the prosecution incorrectly stated the burden of proof by implying that the defense had an obligation to present evidence regarding who owned the Elysian and Victory residences. Appellant asserts that the prosecutor's statements left the jury with the impression that because appellant did not prove who the owner was, appellant was the owner. Appellant argues that this shift of burden to appellant violated his right to a fair trial.
 {¶ 25} In this case, appellant was caught and arrested after fleeing the Elysian address during the execution of the search warrant. On appellant, police found keys for both the Elysian and Victory addresses. The state argued that the fact that appellant had the keys to these residences could be considered as a factor in establishing that appellant was in control of these premises and, therefore, in possession of the drugs therein.
 {¶ 26} During closing, defense counsel argued that the state failed to check into or establish who owned or leased these premises, how many keys existed for each, who paid the utilities, or who resided there. Defense counsel stated that the state did not prove these points "[b]ecause they wanted Rick to prove, they wanted Rick to proffer everything else, and they want you to assume because Rick has the key he's in control of the property and possesses everything in the house."
 {¶ 27} During rebuttal, the prosecutor argued that appellant could have subpoenaed the information himself. The following colloquy occurred:
 {¶ 28} "MR. LOISEL: * * * Now I'll get back to the fact that you know what? [Drug dealers] are careful. We don't know if Detective Awls ever did see him at that residence because that was probably part of his investigation we'll never know. Maybe I should have asked him, and I didn't, but defense counsel didn't ask him either. Defense counsel has subpoena power as well, just like the State. Did defense counsel subpoena the owners of this residence?
 {¶ 29} "[DEFENSE]: Your Honor, I'm going to object to that.
 {¶ 30} "THE COURT: Your objection is sustained. The defense has the obligation to do nothing. They are obliged to do nothing, and you can't argue that the failure to do something is a breach of any duty, so I'll sustain that objection.
 {¶ 31} "MR. LOISEL: Well, I'll leave you with that defense has subpoena power.
 {¶ 32} "[DEFENSE]: Objection.
 {¶ 33} "THE COURT: Sustained.
 {¶ 34} "MR. LOISEL: That's a fact.
 {¶ 35} "THE COURT: Objection was sustained if you didn't catch it.
 {¶ 36} "MR. LOISEL: Yes, Your Honor."
 {¶ 37} "[A] prosecutor is entitled to a certain degree of latitude in closing argument." State v. Benge (1996),75 Ohio St.3d 136, 141, citing, State v. Liberatore (1982),69 Ohio St.2d 583, 589. "A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones." State v. Smith (1984), 14 Ohio St.3d 13, 14, citing, Berger v. United States (1935), 295 U.S. 78, 88. It is "within the sound discretion of the trial court to determine the propriety of these arguments." Benge at 141, citing, State v.Maurer (1984), 15 Ohio St.3d 239, 269.
 {¶ 38} When reviewing a case for prosecutorial misconduct, we must "consider the effect the misconduct had on the jury in the context of the entire trial." State v. Keenan (1993),66 Ohio St.3d 402. A case will only be reversed on the basis of improper prosecutorial behavior "where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found appellant guilty." Benge at 1411-42, citing, Statev. Loza (1994), 71 Ohio St.3d 61, 78.
 {¶ 39} It is well-settled that "the state may comment upon a defendant's failure to offer evidence in support of its case."State v. Collins (2000), 89 Ohio St.3d 524, 527, citing, Statev. D'Ambrosio (1993), 67 Ohio St.3d 185, 193; State v.Williams (1986), 23 Ohio St.3d 16, 20; State v. Petro (1948),148 Ohio St. 473, 498; and State v. Champion (1924),109 Ohio St. 281, 289-290. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of hisFifth Amendment right to remain silent." Collins at 527-528. Moreover, "the prosecutor is not precluded from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense." Id. at 528, citing, State v.Watson (1991), 61 Ohio St.3d 1, 9. The prosecution may also comment on "the defendant's failure to provide evidence to support proffered theories of excuse or innocence." Id.
 {¶ 40} In this case, appellant asserted in his defense that the state failed to prove that he, rather than someone else, owned, occupied, or had access to the Elysian residence, or that he was in possession of the drugs therein. Having made this argument in his defense, we find that the prosecutor was entitled to comment on appellant's failure to provide his own evidence in support of this exculpatory defense theory. Therefore, although we strongly disapprove of Attorney Loisel's flagrant disregard for the trial court's authority when it sustained defense counsel's objections, we nevertheless find that the state's comments did not preclude appellant from having a fair trial. Appellant's third assignment of error is therefore found not well-taken.
 {¶ 41} In his fourth assignment of error, appellant argues that the trial court erred when it sentenced him to non-minimum, consecutive sentences based upon facts not alleged in the indictment or admitted by appellant. We find that this case is controlled by the Supreme Court of Ohio's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, wherein the court held that R.C. 2929.14(B) and R.C. 2929.14(E)(4) violate theSixth Amendment to the United States Constitution, pursuant to Blakelyv. Washington (2004), 542 U.S. 296, and Apprendi v. New Jersey
(2000), 530 U.S. 466. Having relied on unconstitutional statutes when sentencing appellant, we find that the trial court's sentence is must be vacated. Foster at ¶ 103 and ¶ 104. Appellant's fourth assignment of error is therefore found well-taken.
 {¶ 42} Based upon the foregoing, we find that appellant was not prejudiced or prevented from having a fair trial and, therefore, affirm appellant's convictions. We, however, reverse the judgment of the Lucas County Court of Common Pleas as to sentencing. This matter is remanded to the trial court for a new sentencing hearing in accordance with Foster, supra. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Skow, J., concur.